**FILED**

JUL 2 2 2009



Clerk, U.S District & Bankruptcy
**U.S. Department of Justice** Courts for the District of Columbia

Criminal Division
Narcotic and Dangerous Drug Section

*Copy filed
in lieu
of missing
Original
M. L. P.*

_____

*1400 New York Avenue, N.W*
*Washington, D C  20005*

July 21, 2009

The Honorable Reggie B. Walton
United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re:  United States v. Rodrigo Tovar Pupo, Case No. 04-114-9 (RBW)(Plea Under Seal)

Dear Judge Walton,

     I am enclosing a revised statement of facts for the plea hearing in your courtroom scheduled for tomorrow, Wednesday, July 22, 2009 at 9:15 a.m.  After consulting with Mr. Perez, we have made a few minor changes to the statement of facts, as follows;

    1.  Paragraph 3, last sentence: deleted the phrase "In the late 1990's."
    2.  Paragraph 5, first sentence: deleted the phrase "and elsewhere."
    3.  Paragraph 7, first sentence: added the words "and through."
    4.  Paragraph 8, third sentence: added the words "some of."
    5.  Paragraph 9, first sentence: after the word elements, added "–and guaranteed" in place of "these individuals ensured."
    6.  Paragraph 10, first sentence: deleted the phrase "including other leaders, subordinates, financial commanders, and others."

     I can be reached at (202) 305-0524 if your chambers has any questions or concerns.

                      Sincerely,

                      ____/s/_____
                      Glenn C. Alexander
                      Trial Attorney
                      Narcotic and Dangerous Drug Section

cc: Joaquin Perez, Esq., Counsel for Mr. Tovar Pupo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 04-114-09 (RBW) |
| | : | |
| RODRIGO TOVAR-PUPO, | : | |
|    a/k/a "Jorge 40," | : | FILED UNDER SEAL |
|    a/k/a "Papa Tovar," | : | |
| | : | |
|    Defendant. | : | |

## STATEMENT OF FACTS

The United States of America submits the following statement of facts in support of defendant's plea of guilty:

1.      In 2000, the United States Drug Enforcement Administration initiated an investigation of the Self-Defense Forces of the Campesinos of Magdalena and Guajira (ACMG), which was led at the time by Hernán Giraldo-Serna, a co-defendant in this case, and operated along the northern Caribbean coast of Colombia which includes the area near the city of Santa Marta. By March 2002, the ACMG had been subsumed within the Bloque Norte, a group led by Rodrigo Tovar-Pupo that was itself part of a larger umbrella organization, the United Self-Defense Forces of Colombia (AUC), and the ACMG was re-established and became known as the Tayrona Resistance Front.

2.      The AUC was a federation of right-wing, self-defense, paramilitary-style groups (such as the ACMG and Bloque Norte/Tayrona Resistance Front) that was initially formed in approximately 1997 to undertake responsibility for protecting Colombian citizens from left-wing guerrilla organizations dedicated to the overthrow of the Colombian government.

3.      By 1996, the defendant, Rodrigo Tovar-Pupo, had become a member of the

1

United Self-Defense Forces of Córdoba and Urabá (ACCU), a self-defense group operating in northwestern Colombia led by Carlos Castaño.  By 1997, Carlos Castaño had organized the ACCU and several other groups throughout Colombia, including the Bloque Norte, around a national structure, the aforementioned AUC, led by Carlos Castaño.  By 1999, Tovar-Pupo had become a leader of the AUC's Bloque Norte, conducting the group's activities from Valledupar, Colombia, in the Department of Cesar, an area immediately central and south of the Department of Magdalena.  In order to raise revenue to fund its activities, the AUC and other associated blocks, including the Bloque Norte and ACMG, implemented a policy of taxing participants in the cocaine production and distribution process.

4.      Meanwhile, co-defendant Giraldo-Serna had been the leader of the ACMG for several years by 1998, and conducted that organization's operations from several compounds in the Sierra Nevada mountains outside of the coastal town of Santa Marta.  Giraldo-Serna organized and led members of the ACMG involved in drug trafficking operations who were tasked with the collection of war taxes throughout the ACMG area of control.

5.      Beginning in 1998, defendant Tovar-Pupo, on behalf of the AUC's Bloque Norte, began to acquire land and power, including social, political and military influence, in large parts of northeastern Colombia.  Beginning in 2001, Tovar-Pupo began expanding his influence into the region controlled by Giraldo-Serna and the ACMG, in the area of the Sierra Nevada and the north coast of Colombia.  Eventually, this expansion led to a confrontation in late 2001 and early 2002 between these two groups.  By March 2002, in order to avoid a prolonged conflict involving each group's armed forces over the control of the ACMG's area and the related taxing of drug traffickers, smugglers of other contraband, and legitimate businessmen who operated in and utilized that area of Colombia, an agreement was reached whereby the AUC merged with

2

8.     The AUC members who oversaw and taxed numerous shipments of cocaine included co-defendants Hernán Giraldo-Serna, Jesus Giraldo-Serna, Nodier Giraldo-Giraldo, Martin Penaranda-Osorio, Freddy Castillo-Carillo, Edwing Mauricio Gomez-Luna, and Huber Anibal Gomez Luna. Between early 2002 -- when defendant Tovar-Pupo became a leader of the merged Bloque Norte/Tayrona Resistance Front -- and 2005, the defendant and co-defendants were involved in the taxation of drug traffickers who utilized the coastal area to launch numerous drug shipments on go-fast boats. The cocaine in some of these shipments was ultimately destined for the United States. Taxes due on these cocaine loads, which averaged between 1,000 and 1,500 kilograms of cocaine each, ranged in amount from an average of 50,000,000 Colombian pesos (approximately $25,000) per boat-load in 1998, increasing at the direction of the leaders of the ACMG and, later, the AUC leadership each year by an average of 25,000,000 Colombian pesos. Prior to the time the loads were launched, the appropriate tax would be paid by the trafficker to the defendant's subordinates in cash -- either in Colombian pesos, U.S. dollars or a combination of both. All of these taxes were, in turn, initially paid to co-defendant Hernán Giraldo-Serna, either personally or through representatives, including co-defendants Jairo Antonio Musso-Torres and Nodier Giraldo-Giraldo. After the 2002 establishment of the Bloque Norte/Tayrona Resistance Front, the taxes were paid to defendant Tovar-Pupo through his representative co-defendant Nodier Giraldo-Giraldo, who had been designated as the "finance commander" in approximately early 2002.

9.     In exchange for these taxes, the Bloque Norte/Tayrona Resistance Front provided security for the drug traffickers – thereby ensuring that the traffickers were not confronted by left-wing guerilla groups or other criminal elements – and guaranteed, among other things, that AUC troops would be present in the area to: provide perimeter security during coca cultivation

and processing and the actual loading of the cocaine into the go-fast boats; perform surveillance on rival drug trafficking groups; and monitor and relay communications within various units of the Bloque Norte/Tayrona Resistance Front. Also, the defendant was supported by his own armed security detail, and frequently carried firearms, including pistols and rifles, during organization-related activities.

10. In summary, in the course of the defendant's activities leading the organization, including those activities with other members of the AUC and Bloque Norte/Tayrona Resistance Front, the defendant came to learn the following from members of his organization: that large quantities of cocaine, amounting to more than 1,500 kilograms, either transited through or were manufactured in the Bloque Norte/Tayrona Resistance Front's area of control and were subject to taxation; that in exchange for receipt of the taxes, the laboratories where the cocaine was manufactured were allowed to operate and cocaine that was transiting through the area was allowed to pass, and that both activities were provided protection from insurgent groups and other criminal elements and that once the cocaine that was manufactured in and transited through his area of control left Colombia, the cocaine traveled to places outside of Colombia, where other coconspirators would transport it to other countries, including the United States.

11. This Statement of Facts is not intended to constitute a complete statement of all facts known by defendant Rodrigo Tovar-Pupo, but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this Statement is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged offense. Had there been a trial in this matter, the Government would have proven each of the facts as outlined, beyond and to the exclusion of every reasonable doubt, and further that

5

## ATTORNEYS' ACKNOWLEDGEMENTS

I have read the above Statement of Facts as to my client's involvement in a conspiracy to import five kilograms or more of cocaine into the United States and to manufacture and distribute five kilograms or more of cocaine, intending and knowing and such cocaine would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959, 960 and 963, and Title 18, United States Code, Section 2.  I have reviewed the entire statement of facts with my client and have discussed it with him fully.  I am fluent in the Spanish language and I confirm that the Statement of Facts was accurately translated for my client.  I concur in my client's agreement with and acceptance of this statement of facts.


Date:_____          _____
                                        H. Heather Shaner
                                        Counsel for Rodrigo Tovar-Pupo


I have read the above Statement of Facts as to my client's involvement in a conspiracy to import five kilograms or more of cocaine into the United States and to manufacture and distribute five kilograms or more of cocaine, intending and knowing and such cocaine would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959, 960 and 963, and Title 18, United States Code, Section 2.  I have reviewed the entire statement of facts with my client and have discussed it with him fully.  I am fluent in the Spanish language and I confirm that the Statement of Facts was accurately translated for my client.  I concur in my client's agreement with and acceptance of this statement of facts.


Date:_____          _____
                                          Joaquin Perez
                                        Counsel for Rodrigo Tovar-Pupo