## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br><br>v.                              )<br><br>RODRIGO TOVAR PUPO,          )<br><br>      Defendant.          ) | **CASE NUMBER: 04-114-09-RBW**<br><br>**FILED UNDER SEAL** |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S MOTION TO WITHDRAW HIS PLEA

The United States (hereafter, the "Government), through the undersigned attorney, hereby opposes Defendant's Motion To Withdraw His Plea (hereinafter referred to as motion to withdraw).  In support thereof, the Government states the following:

### Procedural History

On July 22, 2009, Defendant Rodrigo Tovar Pupo (hereafter, the "Defendant") pled guilty to one count of conspiracy to manufacture and distribute five kilograms or more of cocaine, a Schedule II controlled substance, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C §§ 963, 959, 960 and 18 U.S.C. § 2.  On that date, the Court conducted a Rule 11 inquiry with Defendant and accepted Defendant's plea after finding it was knowing and intelligent with a full appreciation of the consequences.  Pursuant to the plea agreement between Defendant and the Government, sentencing was postponed to allow Defendant to provide assistance and information to the Government.  A series of status hearings were scheduled to monitor the progress of Defendant's cooperation prior to sentencing.  On June 30, 2011, Defendant filed his motion to withdraw his

1

guilty plea, alleging that he had received ineffective assistance of counsel which tainted the

voluntariness of his guilty plea. Def. Motion 1, 25. Defendant's motion further purports to assert

a claim of innocence and argues that the two-year delay between his guilty plea and his motion

to withdraw will not prejudice the Government. Def. Motion 1, 31. The Government

respectfully opposes Defendant's motion.

### Argument

I.  **DEFENDANT IS PRECLUDED FROM WITHDRAWING HIS GUILTY PLEA, AS THERE ARE NO FAIR AND JUST REASONS FOR A WITHDRAWAL**

A defendant may withdraw a guilty plea after the court accepts the plea, but before it

imposes a sentence, if the defendant can show a fair and just reason for the withdrawal. FED. R.

CRIM. P. 11(d). Permission to withdraw a guilty plea prior to sentencing "rests in the sound

discretion of the trial court." *United States v. Tolson*, 372 F. Supp. 2d 1, 8 (D.D.C. 2005).

Presentence withdrawal motions are not granted as a "matter of right." *United States v. Ahn*, 231

F.3d 26, 30 (D.C. Cir. 2000). Rather, courts look to the following three factors to determine

whether the defendant has presented a fair and just reason for the withdraw of his guilty plea: (1)

whether the defendant has asserted a viable claim of innocence; (2) whether the delay between

the guilty plea and the motion to withdraw has substantially prejudiced the government's ability

to prosecute the case; and (3) whether the guilty plea was somehow tainted. *See United States v.

Jones*, 642 F.3d 1151, 1156 (D.C. Cir. 2011); *United States v. Curry*, 494 F.3d 1124, 1128 (D.C.

Cir. 2007); *United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004); *Tolson*, 372 F. Supp. 2d at

9. The third factor, whether the plea was somehow tainted, is the most important factor and

requires that the defendant show that either the court's taking of the plea failed to conform to the

requirements of Rule 11 or that the plea was in some other sense constitutionally deficient. *Tolson*, 372 F. Supp. 2d at 9.

The D.C. Circuit has made it clear that a defendant who fails to show an error under Rule 11 "has to shoulder an extremely heavy burden if he is ultimately to prevail" on a motion to withdraw. *United States v. Cray*, 47 F.3d 1203, 1208 (D.C. Cir. 1995). Accordingly, when evaluating a motion to withdraw, the established approach in this jurisdiction requires that courts first, and more carefully, evaluate the alleged procedural or constitutional deficiency in the taking of the guilty plea before moving on to address the other two factors. *Tolson*, 372 F. Supp. 2d at 10.

In addition to the fair and just standard and the three factors enumerated above, it is important to note that courts have trended towards the denial of withdrawal motions, recognizing that a guilty plea is a "grave and solemn act, which is accepted only with care and discernment." *United States v. Hyde*, 520 U.S. 670, 677 (1992); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that following the acceptance of a guilty plea based upon a careful Rule 11 inquiry, the withdrawal of that plea "undermines the confidence in the integrity of our procedures...and inevitably delays and impairs the orderly administration of justice"); *United States v. Holland*, 117 F.3d 589, 594 (D.C. Cir 1997) (stating that the entry of a guilty plea is a serious decision, and almost always there is no turning back); *Tolson*, 372 F. Supp. 2d at 24 (finding that the legal system has a general interest in finality in the plea process, which militates strongly against allowing a defendant to withdraw a guilty plea). In *Hyde*, the Supreme Court noted that it is no trifling matter to allow a defendant to withdraw his plea "after he has sworn in open court that he actually committed the crime, after he has stated that he is pleading guilty

because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea." *Hyde*, 520 U.S. at 676.

Based upon the factors above and for the reasons set forth below, the Government respectfully submits that the Court should summarily deny Defendant's motion to withdraw. *See United States v. Robinson*, 587 F.3d 1122, 1132 (D.C. Cir. 2009) (holding that an evidentiary hearing on a motion to withdraw a plea is necessary only where the defendant "offers substantial evidence that impugns the validity of the plea"). As we demonstrate below, the record conclusively establishes that Defendant received adequate assistance of legal counsel and that Defendant's claim of innocence is not viable. Additionally, the two-year delay between Defendant's guilty plea and the filing of his motion to withdraw would substantially prejudice the Government.

### A. Defendant Has Not Shown That His Guilty Plea Was Tainted, As He Has Not Demonstrated That An Actual Conflict Of Interest Adversely Affected His Lawyer's Performance

#### 1. Joint Representation Of Co-Defendants Is Not *Per Se* Unconstitutional Or Prejudicial.

Defendant's motion argues that Defendant's plea was tainted due to an alleged conflict of interest affecting his attorney's performance. This alleged conflict of interest stems from attorney Joaquin Perez's parallel representation of Defendant and two of his co-defendants, Hughes Rodriguez-Fuentes and Salvatore Mancuso Gomez. However, a single attorney providing representation is not a *per se* violation of the constitutional guarantee of effective assistance of counsel, nor is it a *per se* conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). In *Holloway*, the Court recognized that co-defendants can appropriately be represented by a single attorney, and that such representation may actually result in certain advantages from the joint representation. *Id.* at 482-83 (noting that joint representation provides

for a common defense which often gives strength against a common attack).  Furthermore, the Supreme Court has held that unless the trial court fails to afford a defendant the opportunity to object to a potential conflict of interest and show that the potential conflict endangers his right to a fair trial, a reviewing court cannot presume that the possibility of a conflict resulted in the ineffective assistance of counsel.  *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  Accordingly, in the instant case, the Court cannot presume that the joint representation of Defendant and his co-defendants Hughes and Mancuso created an actual conflict of interest for Defendant's attorney.

### 2.  Defendant Has Failed To Demonstrate That An Actual Conflict of Interest Adversely Affected His Attorney's Performance.

Because joint representation of co-defendants is not *per se* unconstitutional, a defendant alleging that his attorney labored under a conflict of interest must demonstrate more than the mere possibility of a conflict of interest in order to impugn a criminal judgment.  *Id.* at 350; *see also Tolson*, 372 F. Supp. 2d at 15 (finding that a "bare assertion" that counsel was motivated by a conflict of interest is not sufficient).  Rather, to argue that ineffective assistance of counsel tainted a guilty plea, a defendant must: (1) establish that his attorney was burdened by an actual conflict of interest, and (2) demonstrate that the conflict of interest adversely affected his lawyer's performance.[1]  *Cuyler*, 446 U.S. at 350.  As we show below, Defendant has failed to meet this burden.

To satisfy the first prong of the *Cuyler* test, a defendant must show that his attorney actively represented conflicting interests.  *See Tolson*, 372 F. Supp. 2d at 12.  In *United States v. Bruce*, the court stated that to establish an actual conflict of interest, a defendant must show, as a

---

[1] Most ineffective assistance of counsel claims are evaluated using the standard set forth in *Strickland v. Washington*, which requires, among other things, that a defendant show that the outcome of the proceedings would have been different but for the challenged attorney conduct.  However, for an ineffective assistance of counsel claim arising from an alleged conflict of interest, a showing of prejudice to the defendant is not required – rather, prejudice is presumed if both prongs of *Cuyler* are met.  *See Strickland v. Washington*, 466 U.S. 668, 692-93 (1984).

"threshold matter," that the attorney was "required to make a choice advancing his own interests

to the detriment of his client's interest." 89 F.3d 886, 893 (1996) (quoting *United States v.*

*Litchfield*, 959 F.2d 1514, 1518 (10th Cir. 1992); *see also United States v. Gantt*, 140 F.3d 249,

254 (D.C. Cir. 1996). In *Bruce*, the court further explained that it is the competition between the

attorney's own interests and his client's interests, rather than some other failure, that gives rise to

an actual conflict. 89 F.3d at 896.

Based upon this exacting standard, it is clear that Defendant has not met the first prong of

*Cuyler*. Defendant's motion alleges that an actual conflict of interest arose when defense

counsel chose to represent Defendant as well as two of his co-defendants. Defendant's motion

argues that defense counsel coerced Defendant to plead guilty because it was his goal to "deliver

Defendant into the Government's hands with a minimum of fuss, with any benefit stemming

from Defendant's cooperation chiefly accruing to other clients…" Def. Motion 25-26.

Defendant's motion further argues that defense counsel pressed Defendant into pleading guilty

for the benefit of Hughes and Mancuso. However, Defendant's motion fails to show that defense

counsel was ever in a position in which he was required to make a choice to advance his own

interests, or the interests of Hughes and Mancuso, to the detriment of Defendant. Defendant's

motion also fails to demonstrate any personal benefit received by counsel when Defendant

entered a guilty plea rather than deciding to go to trial. Based upon the record in this case, the

Government respectfully submits that counsel possessed no self interest that would influence his

actions to the detriment of Defendant.

On the contrary, had defense counsel chosen to advance his own interests, or the interests

of Hughes and Mancuso, to the detriment of Defendant, he likely would have convinced

Defendant to go to trial in this matter. Counsel would certainly have earned a higher fee to

perform the extensive amount of work that goes into a trial. *See* Gantt, 140 F.3d at 255 (finding

that the defendant's claim that his attorney encouraged him to plead guilty in order to maximize

his fee was illogical because his attorney presumably would have earned a larger fee if the

defendant had decided to proceed to trial and holding that the defendant presented nothing to

contradict the obvious). Additionally, Hughes and Mancuso would have received a greater

benefit as well. Both Hughes and Mancuso had entered into cooperation agreements with the

Government, and the Government had not yet extended any promises regarding the exact credit

each would receive for their cooperation. Cooperation that leads to a guilty plea as opposed to

cooperation that leads to a conviction following a trial is viewed differently in the eyes of the

Government. When a cooperating witness provides information in a guilty plea context, their

level of cooperation often remains unknown to outside parties, they are not placed on the witness

stand to have their own criminal backgrounds and bad choices scrutinized, and the time and

effort they expend is often much less. Alternatively, when a cooperating witness testifies at trial,

their lives are dissected in front of the jury, their cooperation becomes public knowledge, and

they may put themselves and their families at risk. Based upon these considerations, credit at the

time of sentencing offered to a cooperating witness is typically greater if that witness is asked to

testify at trial. Accordingly, had counsel been placing the interests of Hughes and Mancuso

before the interests of Defendant, he would have convinced Defendant to go to trial in order to

receive the best possible sentencing benefit for his other two clients.

  In sum, when faced with a choice between his own interests and the interests of

Defendant, the record is clear that defense counsel did not act to the detriment of Defendant.

Similarly, when faced with a choice of obtaining a greater benefit for Hughes and Mancuso, the

record is clear that counsel did not act to the detriment of Defendant. Accordingly, Defendant

has not met the first prong of the *Cuyler* test, as he has failed to show that an actual conflict

existed. Defense counsel was never required to make a choice between his own interests and

Defendant's interests. And even if this Court were to find that defense counsel was faced with

such a choice, it is clear that defense counsel did not choose to advance his own interests, or the

interests of Hughes or Mancuso, to the detriment of Defendant. Therefore, no actual conflict of

interest existed, and Defendant has not established the constitutional predicate for his claim of

ineffective assistance. *See Cuyler*, 446 U.S. at 349-50.

Moreover, the Government further submits that Defendant has not met the second prong

of *Cuyler*, as he has not made any showing that his lawyer's alleged conflict of interest adversely

affected his lawyer's performance. To demonstrate that his lawyer's performance was adversely

affected, Defendant must show that defense counsel decided upon a course of action that a non-

conflicted attorney would not have taken. *Tolson*, 372 F. Supp. 2d at 14. Defendant must further

demonstrate that the alleged conflict had some negative effect on his defense. *Id* at 13; *see also*

*Gantt*, 140 F.3d at 254; *United States v. Taylor*, 139 F.3d 924, 930 (D.C. Cir. 1998).

As stated above, Defendant has not shown that defense counsel decided upon a course of

action that a non-conflicted attorney would not have taken. Active pursuit of a plea agreement

including a cooperation provision seems to give rise to the inference that defense counsel was

trying to obtain the best possible outcome for Defendant in this case. *See e.g., Tolson*, 372 F.

Supp. 2d at 15 (finding that an attorney, who accepted a fee for the defendant's representation

paid by a co-conspirator, did not have an actual conflict of interest, and the fee arrangement did

not adversely affect the defendant's case, stating that it was "quite unlikely" that counsel was

acting to advance the interests of the co-conspirator when counsel actively pursued a plea

agreement including a cooperation provision). Defense counsel's advice that Defendant plead

guilty, and defense counsel's pursuit of an advantageous plea agreement, was entirely reasonable in light of the seriousness of the charges, the weight of the government's evidence, and the potential term of imprisonment Defendant would face if found guilty after a trial.[2]  Defendant's motion has failed to provide any information to suggest that his attorney's performance involved anything other than providing adequate and reasonable legal advice to Defendant or that counsel decided upon a course of action that a non-conflicted attorney would not have taken.  Therefore, even if this Court were to find that defense counsel was burdened by an actual conflict of interest, Defendant has failed to meet the second prong of *Cuyler*, as he has not shown that his attorney's performance negatively affected his case.  If anything, the facts show that defense counsel actively pursued a plea agreement that included the possibility of a greatly reduced sentence to the benefit of Defendant.

### 3. Even If The Court Were To Find That Defendant's Attorney Was Burdened By An Actual Conflict Of Interest, Defendant Waived His Right To A Conflict-Free Attorney

A defendant may waive his right to conflict-free counsel in order to retain the attorney of his choosing.  *See Holloway*, 435 U.S. at 483 n.5.  In a Second Circuit case cited in Defendant's motion, the court held that once a defendant waives his right to conflict-free counsel to retain the attorney of his choice, the waiver cannot be defeated simply because the conflict later affects the attorney's performance.  *United States v. Schwarz*, 283 F.3d 76, 95-96 (2d Cir. 2002) (opining that this would "eviscerate the very purpose of obtaining the waiver").  According to the decision in *Schwarz*, there are some conflicts that cannot be waived, but this is only the case where the conflict is so serious in nature that "no rational defendant would knowingly and intelligently desire that attorney's representation."  *Id.*

---

[2] Defendant's plea agreement specified that he faced a term of imprisonment of not less than ten years nor more than life.  The plea agreement allowed Defendant to receive a three-level reduction in his offense level for acceptance of responsibility and also gave him the opportunity to cooperate with the government for further benefit at sentencing.

In the instant case, even if the Court were to find that Defendant's attorney was burdened by an actual conflict of interest and that the conflict adversely affected his attorney's performance, Defendant still has not shown a fair and just reason for the withdrawal of his guilty plea on the grounds of ineffective assistance of counsel. Defendant consented to representation by Mr. Perez despite the possibility of a conflict of interest, and he therefore waived his right to conflict-free counsel in order to retain the attorney of his choosing. Defendant's motion alleges that defense counsel's potential conflict of interest was never raised or waived by Defendant. However, this assertion is plainly wrong. During a hearing on March 26, 2009, Defendant, his attorney, and the Court addressed the very fact that Mr. Perez was providing representation to co-defendants Hughes and Mancuso while also providing representation to Defendant. During that hearing, the following exchange occurred:

> THE COURT: So understanding that there could be a potential conflict that could occur in this case because Mr. Perez represents you and also desires to represent this person [Hughes] and knowing the potential problem, what is your position? Do you want Mr. Perez to represent you knowing that he also represents this other person?
>
> TOVAR PUPO: Yes, Your Honor.
> Conflicts Hr'g Tr. 5.
> ...
>
> THE COURT: Same thing in reference to him [Mancuso], knowing the problem that can exist when a lawyer is representing two people what is your position? Do you want Mr. Perez to represent? Or do you want a separate lawyer to represent you?
>
> TOVAR PUPO: Your Honor, I would like Mr. Perez to represent me.
> Conflicts Hr'g Tr. 9-11.

At the close of that hearing, the Court made the following finding:

> Defendant fully understands the problem that could arise in reference to Mr. Perez representing him and the other two individuals. And with the knowledge that he is intelligently waiving his right to have another lawyer represent him. And he appreciates if he proceeds with this case

> in this manner that any potential problem of a conflict nature that arises
> in the future he would have waived or given up.  Conflicts Hr'g Tr. 12.

Accordingly, the record is clear that Defendant knowingly and voluntarily waived his right to conflict-free counsel, and the Court formally permitted Mr. Perez to represent Defendant. The Court was not required to accept Defendant's waiver, even with informed consent, because of the wide latitude afforded to trial courts in balancing the right to counsel of Defendant's choice with other interests. *See United States v. Gonzales-Lopez*, 548 U.S. 140, 152 (2006). However, the Court did accept Defendant's waiver in this case after a detailed inquiry. Additionally, Defendant never objected to defense counsel's continued joint representation at any point prior to the entry of his guilty plea.

Defendant's motion further argues that the alleged conflict of interest in this case is such that it cannot be waived.  However, the Supreme Court has clearly recognized that there are situations in which joint representation of co-defendants may be advantageous and that it does not *per se* result in ineffective assistance of counsel. *Holloway*, 435 U.S. at 482-83.  Because joint representation is recognized as a legally appropriate decision by defense counsel, the instant case is not one where the alleged conflict is so serious in nature that "no rational defendant would knowingly and intelligently desire that attorney's representation." *Schwarz*, 283 F.3d at 95-96.  Therefore, the alleged conflict does not create a situation in which the conflict cannot be knowingly and intelligently waived by Defendant, and Defendant did in fact effectuate such a waiver.

### B. Defendant Has Not Shown That His Guilty Plea Was Tainted In Any Other Manner

In addition to the fact that Defendant has not successfully shown that his guilty plea was tainted by ineffective assistance of counsel, the Government argues that Defendant has not made

11

any showing that his plea was tainted in any other manner. At a status conference on August 27, 2010, Defendant claimed that he never felt represented by his counsel. This is the first statement in which Defendant expressed dissatisfaction with his counsel on the record, and this assertion came over sixteen months after the Defendant waived any conflict in open Court (March 26, 2009), and over thirteen months after Defendant pled guilty (July 22, 2009). To the contrary, the record conclusively establishes Defendant's satisfaction with his counsel's performance at the time of his guilty plea. During the plea hearing on July 22, 2009, the Court asked:

> THE COURT: And are you totally satisfied with the legal representation your lawyers have provided to you?
>
> TOVAR PUPO: That is correct, Your Honor.
>
> THE COURT: You have any complaints whatsoever you'd like to make at this time regarding the quality of the representation your lawyers have provided to you?
>
> TOVAR PUPO: No, Your Honor, none.
> Plea Hr'g Tr. 48.

A defendant's representations at the plea hearing regarding adequacy of counsel and the knowing and voluntary nature of his plea "may constitute a formidable barrier to his later refutations." *United States v. Taylor*, 139 F.3d at 933. The Government respectfully submits that Defendant cannot come before the Court two years after his guilty plea to say that he did not feel represented by his counsel when he, under oath, expressed exactly the opposite at the time of his plea.

Next, the exhibits attached to Defendant's motion collectively purport to allege that Defendant was forced into signing a false statement of facts and forced into pleading guilty. However, the record conclusively establishes that at the time of the guilty plea, Defendant entered into the plea knowingly, intelligently, and voluntarily. During the plea hearing, the

Court conducted a careful and thorough colloquy with Defendant to ensure that his decision to

plead guilty was voluntary and that he understood what consequences he was facing and what

rights he was waiving by pleading guilty.  The Court asked:

> THE COURT: Now I have also this Statement of Facts with some
> additions to it.  And I also see that you have signed that document on
> page six, next to the last document, which is an acknowledgment that the
> information contained in the Statement of Facts is in fact true and
> accurate.  Did you, in fact, sign this?
>
> TOVAR PUPO: Yes, Your Honor.  I signed it.
>
> THE COURT: And did you sign it because it is, in fact, true and
> accurate?
>
> TOVAR PUPO: Yes, Your Honor.  I had the opportunity to meet with
> the prosecutors and discuss some of the elements, but I did sign it and
> knowing that these are the facts that led to my responsibility, Your
> Honor.
>
> THE COURT: And are you admitting that you, in fact, did those things
> set forth in that document?
>
> TOVAR PUPO: The Statement of Facts, yes, Your Honor.
> Plea Hr'g Tr. 7-8.
> …
>
> THE COURT: Has anybody threatened, forced, or coerced you to enter
> this plea of guilty?
>
> TOVAR PUPO: No, Your Honor.
> Plea Hr'g Tr. 48.
> …
>
> THE COURT: And who's decision is this to plead guilty, yours or your
> lawyer's?
>
> TOVAR PUPO: No, the decision is mine, Your Honor.
> Plea Hr'g Tr. 48.

During this inquiry, Defendant had several opportunities to notify the Court if he felt he

was being forced or coerced into pleading guilty.  Defendant never stated that he felt forced,

coerced, or even uncomfortable with the statement of facts or with his decision to plead guilty. In *Holland*, the defendant requested to withdraw his guilty plea prior to sentencing, alleging ineffective assistance of counsel. 117 F.3d at 593. However, during the plea hearing, the Defendant affirmed that he understood the plea agreement, confirmed that no one had coerced him into pleading guilty, and stated that he was satisfied with his attorney. *Id.* at 592-95. The reviewing court found that there was no reason to doubt the truth of the defendant's answers during that hearing. *Id.* at 595; *see also Tolson*, 372 F. Supp. 2d at 19 (stating that following a Rule 11 colloquy in which a defendant admits to understanding the court's advice, the criminal justice system must be permitted to rely upon the dialogue between the court and the defendant, and a defendant seeking to withdraw his guilty plea will face a formidable barrier when attempting to refute his earlier assertions). The instant case is no different. Defendant was given ample opportunity to express his concerns to the Court, but he did not do so. Defendant's motion has not presented any compelling reason for the Court to doubt Defendant's assertions at the plea hearing that his plea was voluntary and not forced or coerced.

Finally, Defendant alleges that his plea was tainted by the alleged involvement of Robert Feitel, who was a trial attorney at the Department of Justice, Narcotic and Dangerous Drug Section, at the time of Defendant's guilty plea. Defendant's motion claims that an email sent by Mr. Feitel to defense counsel that included citations to several cases proves that both attorneys were working together to convince Defendant to plead guilty. The Government asserts that one email between two attorneys did not taint Defendant's guilty plea. Mr. Feitel was not assigned to Defendant's case while employed at the Department of Justice, and there is nothing in Defendant's motion to even suggest that any wrongdoing occurred. Thus, Defendant provides nothing to substantiate his allegations that Feitel's limited involvement tainted his guilty plea.

## C.  Defendant Has Not Presented A Viable Claim Of Innocence

Following an analysis of whether a defendant has demonstrated a constitutional or

procedural error in the taking of his guilty plea, courts in this jurisdiction next look to whether

the defendant has presented a legally cognizable defense to the charges against him.  *See Tolson*,

372 F. Supp. 2d at 9 (citing *Cray*, 47 F.3d at 1208).  If it is determined that the plea was not

tainted, a reviewing court will be "extremely reluctant to reverse the [district court's denial of a

motion to withdraw a plea], even if the defendant makes out a legally cognizable defense."

*Jones*, 642 F.3d at 157-58.  This is because a defendant who fails to show a Rule 11 error has to

"shoulder an extremely heavy burden" if he is to prevail on a motion to withdraw.  *Id.*

To satisfy this second factor, a defendant must present far more than a general denial of

guilt – rather, he must "affirmatively advance an objectively reasonable argument that he is

innocent, for he has waived his right to simply try his luck before a jury."  *Robinson*, 587 F.3d at

1131 (quoting *Cray*, 47 F.3d at 1209); *see also Jones*, 642 F.3d at 1158 (finding that the

defendant did not advance a viable claim of innocence, as he simply contradicted his previous

admission that he sold drugs he bought from co-conspirators and maintained an ongoing business

relationship that constituted a conspiracy); *compare United States v. McCoy*, 215 F.3d 102, 107

(D.C. Cir. 2000) (allowing the defendant to withdraw his plea after he successfully demonstrated

his innocence by showing misidentification by police and by advancing other specific, legally

cognizable defenses to each charged act).  In general, the innocence factor weighs against

defendants who do not offer anything to support their bald assertions of innocence.  *Robinson*,

587 F.3d at 1132; *see also Tolson*, 372 F. Supp. 2d at 24 (holding that a defendant who claims to

be innocent must "satisfy an increased evidentiary burden of persuasion requiring that he or she

15

proffer substantial facts in support of the innocence claim"). A defendant who simply says "I am

innocent, despite what I admitted before" will not prevail on a motion to withdraw his plea.

*Tolson*, 372 F. Supp. 2d at 25 (holding that more is required in order to preserve "the solemn

institutional device of the guilty plea"); *see also Holland*, 117 F.3d at 593-94 (holding that a

defendant cannot "wipe the slate clean simply on a lark after he has sworn in open court that he

actually committed the crime, after he has stated that he is pleading guilty because he is guilty,

and the court has found a factual basis for the plea, and after the court has explicitly announced

that it accepts the plea").

Accordingly, a claim of innocence that flatly contradicts the admissions made by a

defendant at his plea hearing is not adequate for purposes of withdrawing a guilty plea. *See*

*Jones*, 642 F.3d at 1159. "A motion that can succeed only if the defendant committed perjury at

the plea proceedings may be rejected out of hand unless the defendant has a compelling

explanation for the contradiction." *Id.* (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C.

Cir. 2006). Lying to the court at the plea hearing is not a fair and just reason for the withdraw of

a plea. *Shah*, 453 F.3d at 523.

In the instant case, Defendant argues that he was not part of a narcotics importation

conspiracy and that he lacked any intent to aid and abet a narcotics conspiracy. However, the

record in this case flatly contradicts Defendant's argument. Defendant signed and orally

affirmed the truth of the Statement of Facts presented at the time of his guilty plea, which

included the following summary of what he came to learn while serving in a leadership capacity

within the United Self Defense Forces of Colombia (AUC) and Block Norte:

> "that large quantities of cocaine, amounting to more than 1,500
> kilograms, either transited through or manufactured in the Bloque
> Norte/Tayrona Resistance Front's area of control and were subject to
> taxation; that in exchange for the receipt of taxes, the laboratories where

the cocaine was manufactured were allowed to operate and cocaine that
was transiting through the area was allowed to pass, and that both
activities provided protection from insurgent groups and other criminal
elements and that once the cocaine was manufactured in and transited
through his area of control and left Colombia, the cocaine traveled to
places outside of Colombia, where other co-conspirators would transport
it to other countries, including the United States."
Statement of Facts 6; Plea Hr'g Tr. 41.

Defendant's motion hardly amounts to a denial of, let alone a defense to, the conspiracy charge.

Several of the exhibits attached to Defendant's motion actually reaffirm his actual knowledge of

and participation in the conspiracy. *See e.g.,* Def. Motion, Exhibit A-4 ("...I was not unaware

that four out of the sixteen Fronts that I formed were financed in part by taxes levied on the

different drug trafficking schemes that existed in that region"); Def. Motion, Exhibit C ("as a

figure of authority on that territory I did not combat the production, sale, and transportation of

drugs within that same territory and the exportation to international markets undertaken by drug

traffickers in exchange for tax payments..."). Defendant's motion also includes letters to

defense counsel in which he admits to the charged conduct. Additionally, during his plea

hearing, Defendant admitted, under oath, to the taxation of illegal drug trafficking organizations

in exchange for security and protection, and Defendant has not presented any legally cognizable

defense or viable claim of innocence to refute these admissions. Therefore, his motion is such

that it could only succeed if he committed perjury at the plea proceeding and therefore can be

rejected "out of hand," as lying to the Court does not present a fair and just reason for the

withdraw of a guilty plea. *Shah,* 453 F.3d at 523

Additionally, Defendant argues that his mere taxation of illegal narcotics does not, as a

matter of law, constitute membership in a narcotics conspiracy because he was acting as the *de

facto* government of the region his organization controlled. To bolster his claim, Defendant

suggests that if taxing controlled substances is illegal, then state and local governments who

impose taxes on controlled substances would be committing federal felonies. This argument is simply illogical and legally unsound. Defendant's conduct involved the use of his leadership in the AUC, a recognized Foreign Terrorist Organization, to tax narcotics operations that are illegal in both Colombia and the United States.[3] This has no relevance to a local government that may regulate controlled substances, such as prescription pain killers, that are legally procured and distributed. This is simply an illogical comparison.

Defendant further argues that his attorney incorrectly led him to believe that the taxation of illegal drug trafficking organizations constituted a conspiracy even though he had no actual knowledge, only constructive knowledge, of the drug importation scheme. However, the record in this case, as well as the content of Defendant's motion, shows that Defendant had actual knowledge of the illegal narcotics conspiracy, and he therefore was not given incorrect advice by his attorney. In the Statement of Facts signed by Defendant, and during the plea proceeding, Defendant admitted that the taxes he collected:

> "provided security for the drug traffickers – thereby ensuring that the traffickers were not confronted by left-wing guerilla groups or other criminal elements – and guaranteed, among other things, that AUC troops would be present in the area to: provide perimeter security during coca cultivation and processing and the actual loading of the cocaine in the go-fast boats; perform surveillance on rival drug trafficking groups; and monitor and relay communications within various units of the Bloque Norte/Tayrona Resistance Front."
> Statement of Facts 5; Plea Hr'g Tr. 38.

At the plea hearing, the Court asked several questions of Defendant to ensure that his plea was knowing and voluntary and that Defendant was pleading guilty because he was in fact guilty, and the Court accepted Defendant's guilty plea based upon this inquiry.

---

[3] The United States Department of State classifies the United Self Defense Forces of Colombia (AUC) as a Foreign Terrorist Organization, and the AUC is not recognized as the ruling government of Colombia. *See* http://www.state.gov/s/ct/rls/other/des/123085.htm.

COURT: And you are admitting that you, in fact, did those things set forth in that document [Statement of Facts]?

TOVAR PUPO: The Statement of Facts, yes, Your Honor.
...

COURT: Now I understand that you are agreeing that under the United States sentencing guidelines that you are accountable for more than 150 kilograms of cocaine; is that right?

TOVAR PUPO: **Yes, Your Honor, based on charging for taxes over those quantities and even more than that, Your Honor.**
(Emphasis added).
...

COURT: And I also understand that you are agreeing that an additional one level increase is appropriate because the quantity of the amount of drugs that you were involved in was extraordinary, well above ten times required for level 38; is that correct?

TOVAR PUPO: Yes, Your Honor, based on the taxes that were levied on those quantities.

COURT: I also understand that you are agreeing to an additional two level increase of the offense level because you possessed a firearm during the time that this activity was taking place; is that right?

TOVAR PUPO: Yes, Your Honor, consistent with my responsibility, my responsibility due to the conflict that exists in my country and in which I participated in.
Plea Hr'g Tr. 8-12.
...

COURT: ...how to you plead, guilty or not guilty, sir?

TOVAR PUPO: Guilty within my own responsibilities, Your Honor.

COURT: Very well.  I will accept the plea of guilty concluding that it is a knowing and intelligent plea by the defendant with a full appreciation of the consequences.
Plea Hr'g Tr. 50.

These admissions clearly demonstrate that Defendant actively participated as a co-

conspirator based upon the wide range of services that the taxes he collected provided to drug

traffickers, and defense counsel correctly advised him that his conduct constituted a role in the conspiracy. This colloquy also shows that the Court found a factual basis for the guilty plea. Defendant's motion argues that he never had direct contact with any illegal substances and that he himself did not export any drugs to any part of the world. However, it is well-settled that participation in a drug conspiracy can occur without ever having come into contact with the illegal substance. *See Curry*, 494 F.3d at 1128 (denying a defendant's innocence claim as insufficient when the defendant argued that he did not participate in any controlled drug buys, that he was never found in possession of any drugs, and that he did not own the car in which the drugs were transported and finding that a person can be guilty of conspiracy, aiding and abetting, or constructive possession without ever having touched the illegal substances at issue); *see also United States v. Poston*, 902 F.2d 90, 96 (D.C. Cir. 1990) (holding that a defendant who acted as a look-out for a drug distribution organization was liable under an aiding and abetting theory of conspiracy).

Defendant's admissions clearly indicate that he played an active role in a drug trafficking conspiracy and acted in furtherance of that conspiracy by collecting taxes and, in return, providing protection to organizations who he knew were illegally cultivating, transporting, and distributing illegal drugs, and exporting those drugs to the United States. Defendant's motion has offered no legally cognizable defense. Because Defendant has not presented a viable claim of innocence, the Government respectfully submits that the Court should deny Defendant's motion based upon the second factor as well.

### D. The Government Will Be Prejudiced By The Two-Year Delay Between The Guilty Plea And Defendant's Motion To Withdraw His Plea

Finally, the Court must consider the substantial prejudice to the Government that would result from the approximately two-year delay between Defendant's guilty plea, entered on July 22, 2009, and Defendant's motion to withdraw, filed on June 30, 2011. While prejudice to the Government is one of the three factors for the Court to consider and may favor either party, it is not a dispositive factor. *Robinson*, 587 F.3d at 1132. In fact, if the Court were to find that the plea proceeding was constitutionally adequate and that Defendant did not present a legally cognizable defense, the Court may decline to consider the matter of prejudice, as Defendant has not shown a fair and just reason for the withdrawal of his plea. *See Cray*, 47 F.3d at 1207-09 (declining to reach the defendant's arguments regarding the lack of prejudice to the Government because the court had already determined that the defendant entered a knowing and voluntary guilty plea and failed to present a legally cognizable defense). Nevertheless, the Government contends that it would be substantially prejudiced if Defendant were permitted to withdraw his guilty plea.

One important consideration when evaluating prejudice to the Government is the amount of time that has passed between a defendant's guilty plea and his motion to withdraw. Many courts have found prejudice to the Government in cases where the delay was much shorter than the almost two-year delay in the instant matter. *See e.g., United States v. Barker*, 514 F.2d 208 (D.C. Cir. 1975) (eight-month delay); *United States v. Ellis*, 470 F.3d 275 (6th Cir. 2006) (six-month delay); *United States v. Cotal-Crespo*, 47 F.3d 1 (1st Cir. 1995) (two-month delay); *United States v. Grant*, 117 F.3d 788 (5th Cir. 1997) (three-month delay); *United States v. Gonzalez*, 970 F.2d 1095 (2d Cir. 1992) (seven-month delay).

In the instant case, Defendant waited approximately two years before filing his motion to withdraw. This lengthy delay will undoubtedly prejudice the Government's ability to successfully try this case. The Government will be required to expend considerable amounts of time and resources relocating foreign witnesses and obtaining foreign evidence that may no longer be available. Additionally, due to the substantial passage of time, witnesses that are successfully located may not recall the details of this case with the same accuracy as if this case had gone to trial two years ago. Although prejudice is not a dispositive factor, we submit that the potential prejudice to the Government resulting from Defendant's two-year delay in the filing of his motion provides further justification for this Court's denial of Defendant's motion to withdraw.

### E. The Defendant Has Failed To Make A Showing of Merit Sufficient to Even Warrant the Holding of An Evidentiary Hearing

Finally, it is clear that law does not require that an evidentiary hearing even be held when, as here, the defendant fails to make a sufficient showing that his claim is meritorious. *See Curry*, 494 F.3d at 1124( D.C. Cir. 2007)("The Court is not required to hold an evidentiary hearing on these motions to withdraw plea, because they present no material factual issues in dispute."). In the instant matter, as demonstrated above, the Defendant has completely failed to make the substantial showing necessary to warrant a hearing. "A district court need hold an evidentiary hearing on a plea withdrawal only where the defendant offers 'substantial evidence that impugns the validity of the plea.'" *United States v. West*, 392 F.3d 450, 457, n.4 (D.C. Cir. 2004). As the Court noted in *United States v. Thomas*, 541 F. Supp. 2d 18, 23 (D.D.C. 2008), "[h]owever, 'a court does not abuse its discretion in [holding no hearing] where there are no material factual issues in dispute.' A hearing is unnecessary when the motion 'fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient

performance might properly be found.' Summary disposition may also be appropriate where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion.'" (internal citations omitted). In this instance, summary disposition is appropriate given the paucity of Defendant's allegations.

## Conclusion

On July 22, 2009, this Court found that Defendant voluntarily, knowingly, and intelligently entered a guilty plea to one count of conspiracy to manufacture and distribute five kilograms or more of cocaine, a Schedule II controlled substance, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C §§ 963, 959, 960 and 18 U.S.C. § 2. Approximately two years later, Defendant filed a motion to withdraw that plea, but his motion fails to present a fair and just reason for the Court to permit the withdrawal. Defendant's plea proceeding adhered to all Rule 11 procedural mandates. Furthermore, Defendant's plea was not tainted, as an actual conflict of interest did not exist, and even if it did, it did not adversely affect Defendant's case. Additionally, Defendant's motion failed to present a viable claim of innocence or a legally cognizable defense to the conspiracy charge and provided nothing to contradict the admissions made by Defendant during his plea proceeding. Lastly, if the Court were to grant Defendant's motion, the Government would be substantially prejudiced by the two-year delay between Defendant's guilty plea and the filing of his motion.

For the foregoing reasons, in accordance with the governing practice in this jurisdiction, the Government respectfully requests that this Court deny Defendant's request for an evidentiary hearing, and summarily deny Defendant's Motion To Withdraw His Plea.

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section
United States Department of Justice
Criminal Division

By:

Darrin L. McCullough, Trial Attorney
Narcotic and Dangerous Drug Section
United States Department of Justice
Criminal Division
1400 New York Avenue, Northwest
Washington, D.C. 20005
Phone: (202) 616-2255
Email: Darrin.mccullough@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS PLEA was filed on this 31st day of January, 2012, and that a copy will be served on the following, via e-mail:

*Counsel for Defendant Tovar-Pupo*
Barry Coburn, Esquire
Coburn & Greenbaum PLLC
1710 Rhode Island Avenue, Northwest
Second Floor
Washington, D.C. 20036
Office: (202) 643-9472
barry@coburngreenbaum.com

Darrin L. McCullough, Trial Attorney
Narcotic and Dangerous Drug Section
United States Department of Justice
Criminal Division