UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 04-114-09 (RBW) |
| | : | |
| RODRIGO TOVAR PUPO, | : | UNDER SEAL |
| | : | |
| Defendant. | : | |

DEFENDANT RODRIGO TOVAR PUPO'S SUPPLEMENTAL SUBMISSION
IN SUPPORT OF HIS RENEWED MOTION TO WITHDRAW GUILTY PLEA

Defendant Rodrigo Tovar Pupo, through undersigned counsel, respectfully makes this Supplemental Submission In Support Of His Renewed Motion To Withdraw Guilty Plea.

We do not seek to repeat what already has been proffered in Mr. Tovar Pupo's Motion To Withdraw Guilty Plea, which we seek to incorporate by reference in this submission. Rather, we hope in this memorandum to focus upon certain discrete issues which we believe are critical to a disposition of the motion to withdraw guilty plea.

Background

There has never been any question that Mr. Tovar Pupo's principal counsel at the time he entered his plea of guilty, Joaquin Perez, labored under at least a potential conflict of interest. Probing this potential conflict was the subject of a status hearing on March 26, 2009, four months prior to the date Mr. Tovar Pupo's plea of guilty was entered, on July 22, 2009. Our submission here is that what existed at the time Mr. Tovar Pupo pleaded guilty was an actual, un-waivable conflict of interest which irretrievably taints Mr. Tovar Pupo's plea of guilty. The nature of the conflict of interest was not appropriately identified for the Court by the parties, particularly defense counsel, either at the hearing on March 26, 2009, or at the succession of proceedings culminating in Mr. Tovar Pupo's plea of guilty on July 22, 2009. The effect of this conflict of interest was exacerbated by the intense, unremitting pressure to plead guilty placed on Mr. Tovar Pupo by his counsel, aided by a prosecutor who, as

1

described in our initial motion to withdraw guilty plea, later became Mr. Tovar Pupo's counsel for a brief period of time. These circumstances, we respectfully submit, leave an irremediable taint on Mr. Pupo's plea of guilty, and require that Mr. Tovar Pupo be permitted to withdraw it and proceed to trial.

<u>The March 26, 2009 Hearing</u>

The colloquy at the March 26, 2009 hearing ("the March 26 hearing") focused upon how cooperating witnesses against Mr. Tovar Pupo might be cross examined if the case went to trial, given that Mr. Tovar Pupo's counsel represented a number of them at the same time his counsel represented Mr. Tovar Pupo:

> THE COURT: Ms. Shaner, have you had any conversations with the defendant about this potential conflict? . . .
>
> MS. SHANER: I explained to him that the Court had some concerns and that there might be the appearance of a conflict  His position is that there is no actual conflict.

Tr. 3/26/09 at 2. Ms. Shaner went on to explain that it would be her intention to cross-examine one particular cooperating witness, Mr. Rodrigues-Fuentes, were he to testify against Mr. Pupo at trial. She said she had met Mr. Rodrigues-Fuentes and had proposed that he be represented by Mr. Perez, but had received "no client confidences from him." Tr. 3/26/09 at 3. Ms. Shaner added: "And I don't think this is really going to trial, but I can't guarantee that." Tr. 3/26/09 at 3.

The government stated its view that if the case went to trial, there would be an actual conflict because "Mr. Perez could be representing people in this case and perhaps other cases who are potential witnesses." Tr. 3/26/09 at 3. With respect to the period of time prior to trial, however, the government took the position that what was presented was "only a potential conflict." *Id.* The Court then engaged Mr. Tovar Pupo in a colloquy during which he stated that he understood that Mr. Perez could have a conflict of interest if the case proceeded to trial, but that at this point in time, the conflict was only potential. Tr. 3/26/09 at 4-8.

The government then informed the Court that Mr. Perez also represented another government

2

cooperating witness, Salvatore Mancuso.  The Court's reply reflects the way in which both parties in this case had framed the "potential conflict" for the Court's consideration:

> THE COURT:  . . . But it seems the potential conflict reallly rests here with him [the Defendant].  Because it could be a conflict for the other person, but I think it's more of a potential [rather than actual] problem for him [the Defendant] because I think the real conflict, actual conflict arises if he goes to trial and then that other person ends up testifying against him.

Tr. 3/26/09 at 8-9.  This view was reflected in the Court's colloquy with Mr. Tovar Pupo after the government informed the Court of Mr. Perez's contemporaneous representation of Mr. Mancuso:

> THE COURT:  Now you should understand that Mr. Perez also represents that person [Mancuso].  And the same thing I said about the other person [Rodrigues-Fuentes] he represents and the potential conflict that creates also applies to this other person[,] Mr. Salvatore Mancuso.  And so the real problem as I say arises just like with the other person, if you decide to go to trial and if he were to testify against you[,] obviously Mr. Perez has to represent his interests and his interests would be different than your interests since he'd be testifyin against you and you'd be in trial trying to defend yourself against these charges.
>
>   Same thing in reference to him, knowing the problem that can exist when a lawyer is representing two people what is your position?  Do you want Mr. Perez to represent?  Or do you want a separate lawyer to represent you?
>
> THE DEFENDANT:  Your Honor, I would like Mr. Perez to represent me.

Tr. 3/26/09 at 10-11.

   At no point, however, did either party – in particular, defense counsel – proffer to the Court the actual nature of the conflict of interest presented in this case, which related directly to the Defendant's decision to plead guilty, as opposed to a situation he might confront at trial.  Mr. Tovar Pupo's counsel represented other individuals who were, or were intending to be, cooperating witnesses in the government's ongoing investigation and prosecution of Colombian nationals on drug charges. Accordingly, these other individuals <u>had a direct and substantial interest in causing Mr. Tovar Pupo to plead guilty, either directly or through Mr. Perez.</u>  Were Mr. Tovar Pupo to do so, these other individuals would receive "cooperation credit" for his plea of guilty, pursuant to U.S.S.C. Section

3

5K1.1. Thus Mr. Perez and his colleagues had an overwhelming incentive to overbear Mr. Tovar Pupo's will in order to induce him to plead guilty, in order to benefit the individuals they already represented. And this is precisely what they did, though Mr. Tovar's attempt to plead guilty broke down at least once and possibly twice given his repeated protestations of his factual innocence, which continue to this day. It appears, in fact, that one of these cooperating defendants actually visited Mr. Tovar Pupo in jail in order to implement this objective.

At the evidentiary hearing, we will seek to elicit testimony from Mr. Tovar Pupo, his prior counsel, witnesses familiar with the representation of the other defendants contemporaneously represented by his counsel, and, we anticipate, from an expert witness who would opine concerning the ethical issue presented, including whether this conflict of interest was actual or waivable under the applicable District of Columbia ethical rules.

Argument

The evidence will show that the conflict of interest presented here was actual and un-waivable. Even more fundamentally, it will be demonstrated that, given the manner in which the parties presented the "potential conflict of interest" issue to the Court, Mr. Tovar Pupo never waived the actual conflict of interest under which his counsel labored.

*Thomas v. Foltz,* 818 F.2d 476 (6th Cir. 1987) is analogous. There a *habeas corpus* petitioner and two co-defendants all were represented by the same lawyer. The Court of Appeals affirmed the grant of a petition of habeas corpus, finding a conflict of interest.

The *Thomas* Court started its analysis with *Cuyler v. Sullivan*, 446 U.S. 335 (1980), where the Supreme Court held that "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Id.* at 480. Further, it noted that "[t]he Supreme Court has observed . . . that a conflict of interest stemming from multiple representation may prevent an attorney 'from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution.'" *Id.* at 481 (quoting

4

*Holloway v. Arkansas,* 435 U.S. 475, 490 (1978)).  Moreover, "[t]he Fifth Circuit has stated that foregoing such plea negotiations is proof of an actual conflict of interest" (citing *Baty v. Balkcom,* 661 F.2d 391 (former 5th Cir. 1981), *cert. denied,* 456 U.S. 1011 (1982)).  Similarly, the Court found, "[t]here was also an actual conflict of interest in the instant case, since there were competing interests at stake which [the defense attorney] could not not pursue. . . [since] in order to obtain the benefit of the plea agreement for [the co-defendants], [defense counsel] found himself in a position where he needed to place pressure on Thomas to also accept the plea agreement."  *Thomas*, 818 F.2d at 481-82.  *Accord, United States v. Gantt,* 140 F.3d 249, 255 (D.C. Cir. 1998) ("A criminal defendant succeeds on an ineffective assistance of counsel claim under the Sixth Amendment if he shows that an actual conflict of interest adversely affected his lawyer's performance"); *Eber-Schmid v. Cuomo,* 2010 U.S. Dist. LEXIS 39621 (S.D.N.Y. April 22, 2010) ("where a defendant demonstrates that an actual conflict of interest adversely affected counsel's performance, prejudice is presumed");

    The analogy is clear.  Here, Mr. Perez needed to pressure Mr. Tovar Pupo to plead guilty in order to vindicate the interests in his other clients in receiving substantial "cooperation credit."  Just as in *Thomas*, an actual, un-waivable conflict of interest was created.  Mr. Tovar Pupo never waived this conflict of interest, nor could he.

    The un-waivability of a conflict of interest of this type was emphasized by the District of Columbia Court of Appeals, utilizing the same ethical principles that apply here, in *Freeman v. United States,* 971 A.2d 188 (D.C. 2009).  That holding, too, was predicated upon the defense lawyer's representation of another individual with a related case.  There the Court found that the trial court's conclusion that a waiver could not be honored could be based "not only by a demonstration of actual conflict but by a showing of a serious potential for conflict" (quoting *Wheat v. United States,* 486 U.S. 153. 163-64 (1988)).

    Particularly instructive is *United States v. Culverhouse,* 507 F.3d 888 (5th Cir. 2007).  There, the

5

defendant's counsel had simultaneously represented another individual who was cooperating against Culverhouse.  The Court observed that if the other defendant represented by Culverhouse's counsel had provided damaging information about Culverhouse during his debriefings – a situation which plainly arose here in connection with Mr. Perez's representation of other cooperators – then

> [the defense lawyer] suffered under a conflict in representing Culverhouse.  Upon learning of [the other defendant's] information [the lawyer's] loyalties would have become divided . . . at that point [the lawyer] could have counseled [the other defendant] to use, as part of a plea deal, the information damaging to Culverhouse.  ***And as Culverhouse alleges, [the defense lawyer] could have pressured Culverhouse to plead guilty based on his desire to secure lenience for [the other defendant he represented].***  See [United States v. Infante, 404 F.3d 376, 390 & 392 (5th Cir. 2005)] (Where attorney represented witnesses who testified against his client, a conflict existed, in part, because those witnesses could receive lenience for their cooperative testimony).

*Id.* at 893 (emphasis added).

In *Hall v. United States*, 371 F.3d 969 (7th Cir. 2004), the petitioner argued that his counsel had improperly influenced him to plead guilty in order to avoid a conflict that existed in connection with the lawyer's representation of another client.  The Court observed that

> a petitioner who pleaded guilty upon the advice of an attorney with a conflict of interest is not required to demonstrate that he would have decided against pleading guilty had he been represented by a conflict-free attorney. . . .   Nor does such a petitioner need to establish that a conflict-free attorney would have advised against pleading guilty. . . .  As we have held, a defendant can establish ineffective assistance of counsel by showing that his attorney pressured him to plead guilty because of the attorney's conflict of interest. *Daniels v. United States,* 54 F.3d 290, 295 (7th Cir. 1995). . . .  Hall need not show prejudice if he can show an actual conflict existed that had an adverse effect on his representation.

*Id.* at 975-76.  *Accord*, *Daniels,* 54 F.3d at 294 ("The classic conflict of interest situation arises when a lawyer represents two or more co-defendants (as was the case in *Cuyler*) or two clients with opposing interests).  Further, "an actual conflict of interest arises when a defendant alleges in a motion to withdraw his guilty plea that his counsel coerced him to enter into it." *Johnson v. Artus,* 2009 U.S. Dist. Lexis 26534 (S.D.N.Y February 20, 2009).

6

Accordingly, for these reasons and based on the evidence to be elicited at the evidentiary hearing, we respectfully submit that Mr. Tovar Pupo should be permitted to withdraw his guilty plea.

        Respectfully submitted,

           /s/ Barry Coburn
        Barry Coburn
        DC Bar No. 358020
        Tel:  202-643-9472
        barry@coburngreenbaum.com
        Lloyd Liu
        DC Bar No. 1007075
        lloyd@coburngreenbaum.com
        Tel:  (202) 470-1689
        Coburn & Greenbaum PLLC
        1710 Rhode Island Avenue, NW
        Suite 200
        Washington, DC  20036

## Certificate of Service

I hereby certify that I served a true copy of this supplemental submission on the following counsel by e-mail and first-class mail, this 18th of February, 2014:

Paul Laymon, Esq.
U.S. Department of Justice, NDDS
1400 New York Avenue, N.W.
Eleventh Floor
Washington, DC 20530

           /s/ Barry Coburn
        Barry Coburn