UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V.                    )<br>)<br>RODRIGO TOVAR-PUPO   )<br>)<br>Defendant.              ) | Crim. No. CR-04-114-09 (RBW)<br>(UNDER SEAL) |

### RESPONSE TO RENEWED MOTION TO WITHDRAW GUILTY PLEA

**COMES NOW** the United States of America, by and through the undersigned, and responds to the defendant's Renewed Motion to Withdraw Guilty Plea, filed on January 17, 2014, and the defendant's Supplemental Submission in Support of his Renewed Motion to Withdraw Guilty Plea, filed on February 18, 2014.

### INTRODUCTION

On January 31, 2012, the government filed a response in opposition to the defendant's original motion to withdraw his guilty plea (which was filed on June 30, 2011). In that opposition, the government argued at length that the defendant was precluded from withdrawing his guilty plea and that the defendant was not entitled to an evidentiary hearing. The court has now scheduled an evidentiary hearing. However, the government still maintains that the defendant is precluded from withdrawing his guilty plea. In the instant response, the government will focus on the defendant's most recent filings of 2014. The government continues to rely on its original response filed on January 31, 2012, and will only repeat those parts of the original

response necessary to frame and illuminate the issues presented in the most recent defense filings of 2014.

## BACKGROUND

On March 26, 2009, the District Court, at the request of the government, held a hearing to explore whether one of the defendant's two defense counsel, Joaquin Perez, had a conflict of interest.[1]  Mr. Perez also represented two other defendants, Salvatore Mancuso and Hughes Rodriguez-Fuentes, who could have testified against the defendant had the defendant gone to trial.  After hearing from the attorneys, the District Court examined the defendant regarding the conflict of interest issue.  The defendant told the District Court that he waived the conflict and wanted Mr. Perez to remain as his counsel.

On July 22, 2009, the defendant pleaded guilty to conspiracy to distribute cocaine. Nearly two years later, on June 30, 2011, the defendant, by then represented by David Zapp, moved to withdraw his guilty plea.  In 2013, the defendant, now represented by Barry Coburn, appeared in court and withdrew the motion to withdraw his guilty plea.  Sentencing was eventually set for March 7, 2014.  On January 17, 2014, the defendant filed his second motion to withdraw his guilty plea.

## ARGUMENT

### I. Introduction

A defendant may withdraw his guilty plea before sentencing if he can show a fair and just reason for withdrawal.  FED.R.CRIM.P. 11(d).  A reason is fair and just if (1) the

---

[1] Defendant was also co-represented by attorney Heather Shaner.  There was no allegation that Ms. Shaner had any actual or potential conflict of interest.

defendant asserts a viable claim of innocence, <u>and</u> (2) the delay between the plea and the motion to withdraw has not substantially prejudiced the government, <u>and</u> (3) the plea was somehow tainted.  *United States v. Jones,* 642 F.3d 1151, 1156 (D.C.Cir. 2011).  The third factor is the most important and requires the defendant to show the court failed to follow Rule 11 or the plea was otherwise constitutionally deficient.  *United States v. Horne,* 987 F.2d 833, 837 (D.C.Cir. 1993).

Defendant's current motion is presented as a two part argument: first, that his counsel, Mr. Perez, motivated by a conflict of interest, exerted "intense, unremitting pressure" on the defendant to plead guilty, and second, the defendant could not waive the conflict of interest involving Mr. Perez.  The government contends that the defendant pleaded guilty knowingly and voluntarily, and that he could and did waive any potential conflict of interest. Further, the government argues that defendant has not and cannot assert a viable claim of innocence, and that the nearly four and one half year delay between the plea and the most recent motion to withdraw has substantially prejudiced the government.

## II. The guilty plea was not tainted and was constitutionally valid

The defendant does not claim that the District Court failed to follow Rule 11. Accordingly, the government will not address the Rule 11 colloquy.

Rather, the defendant argues that Mr. Perez represented others, Mancuso and Rodriguez, who "had a direct and substantial interest in causing [defendant] to plead guilty ...." (Supplemental Submission in Support of Renewed Motion to Withdraw Guilty Plea, p.3.) Defendant claims that Mancuso and Rodriguez would receive sentencing credit if the defendant pleaded guilty, so in order to serve the interest of these other clients, Mr. Perez "had an

overwhelming incentive to overbear [defendant's] will in order to induce [defendant] to plead guilty." (Supplemental Submission, p. 4.)

To show his counsel was constitutionally deficient, defendant must (1) establish his attorney was burdened by an actual conflict, and (2) demonstrate that the conflict adversely affected his lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980). To show an actual conflict of interest, the defendant must show that his attorney was required to make a choice advancing his own interests, or another client's interests, to the detriment of the defendant's interest. *United States v. Bruce,* 89 F.3d 886, 893 (D.C.Cir. 1996).

As to the first prong of Cuyler, Mr. Perez had no actual conflict of interest, as Mr. Perez made no choice to advance his own interest or another clients's interest to the detriment of the defendant's interest. Though Mr. Perez' other clients, Mancuso and Rodriguez, had the potential to be called as witnesses against the defendant, there was no way to know at that time whether they would ever be called as witnesses, and what if any sentencing credit the government might recommend. Further, assuming Mancuso and Rodriguez would have been called as witnesses, they might have benefitted more had the defendant opted for trial. Thus, Mr. Perez was not in position to have to make a choice between alternative courses of action where one client was favored over another.

As to the second prong of *Cuyler*, assuming there was an actual conflict of interest, there is no evidence that a conflict of interest adversely affected Mr. Perez' performance or adversely affected the voluntary nature of the guilty plea entered by the defendant.[2] Mr. Perez

---

[2] The second prong is defined in some circuits as whether the actual conflict adversely affected the voluntary nature of the plea. *See Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir. 1987).

was not refrained, by his representation of Mancuso and Rodriguez, from doing anything to advance the interests of the defendant, nor did Mr. Perez pressure the defendant to plead guilty in order to protect the interests of Mancuso and Rodriguez.  Mr. Perez vigorously represented the interests of the defendant, both in the United States and in Colombia, which was responsive to the defendant's separate interests apart from the interests of Mancuso and Rodriguez.

### III. The defendant waived any conflict of interest

#### A.  The conflicts hearing and the change of plea hearing

The defendant claims that the true conflict of interest "related directly to the Defendant's decision to plead guilty, as opposed to a situation he might confront at trial." (Supplemental Submission, p. 3.)  That is, defendant argues that the conflicts hearing held by the District Court on March 26, 2009, focused only on Mr. Perez' potential conflict at trial, and that the District Court never addressed the potential for conflict in plea negotiations.  Therefore, says the defendant, he never waived any conflict of interest which would have interfered with Mr. Perez' advice to the defendant about pleading guilty.  Further, the defendant argues that such a conflict is "unwaivable," citing *Thomas v. Foltz,* 818 F.2d 476 (6th Cir. 1987) and *Freeman v. United States*, 971 A.2d 188 (D.C.C.A. 2009).  These cases are distinguishable from the instant case, as will be discussed below.

Recognizing that the defendant clearly waived the potential conflict of interest Mr. Perez had in representing Mancuso and Rodriguez, defendant seeks to limit the effect of that waiver.  However, in doing so, the defendant too narrowly interprets the conflicts hearing and totally ignores the plea colloquy at the change of plea hearing. At the conflicts hearing, the District Court began by asking Ms. Shaner how the case was going to proceed.  Ms. Shaner

responded that she was not certain, but "[w]e have been working on a statement of facts.  And I believe as soon as we reach an agreement with the government that this case could be resolved." (TR, Status Conference, March 26, 2009, p. 2.)  Thereafter, the Court and the defendant discussed the following in regards to Mr. Perez' representation of Hughes Rodriguez.  This conversation occurred after Ms. Shaner assured the court that, in the event of trial, she could cross-examine Rodriguez:

> The Court: Now I need to explain to you the potential problem. When a lawyer is representing someone their total loyalties have to be for that particular client which means they to do what is in the best interest of that client.  There is a potential problem if that lawyer not only is going to represent you, but is also going to represent somebody else who is also involved in this case.  Do you understand that?
> The Defendant: Yes, your Honor.
> The Court: And therefore, it's possible that his loyalties would would be challenged because he would have an obligation to do what's best for you.  He also would have an obligation to do what's best for the other person.  And if what he would do for you as compared to that person conflicted with each other then you'd have a problem providing the quality of representation you're entitled to receive on the one hand and providing the same quality of representation to the other person. Do you understand that?
> The defendant: Yes, Your Honor.  And I know Mr. Perez' professionalism and that gives me peace of mind.
> The Court: Okay.  Well, I don't know and I don't want you to say anything about what you plan on doing in this case. But if you decided to go to trial in this case I understand that the other person he represents would in fact be testifying against you.  Do you understand that?
> The defendant: Yes, Your Honor.... I asked Mr. Perez to take on my representation in this new situation.  Today I'm understanding the situation more....

(TR, Status Conference, March 26, 2009, pp. 4-6.)

A little later in the conflicts hearing, the District Court and the defendant similarly discussed the situation regarding Mancuso:

> The Court: .... Same thing in reference to [Mancuso], knowing the problem that can exist when a lawyer is representing two people what is your position?  Do you want Mr. Perez to represent?  Or do you want a separate lawyer to represent you?
> The Defendant: Your Honor, I would like Mr. Perez to represent me.
> The Court: Okay.  Again, if he represents you with your consent and if a conflict arises in the future you're not going to be able to claim you didn't get the quality of representation from Mr. Perez that you were entitled to because he was also representing Mr. Salvatore Mancuso.  Do yo understand that?
> The defendant: Your Honor, I would like Mr. Perez to represent me.
> .....
> The Court: Very well.  I will conclude that the defendant fully understands the problem ....  And he appreciates if he proceeds with this case in this manner that any potential problem of a conflict nature that arises in the future he would have waived or given up.  Okay?

(TR, Status Conference, March 26, 2009, pp. 10-12.)

Immediately thereafter, the District Court permitted Mr. Perez to enter his appearance on behalf of the defendant, and Mr. Perez asked the Court, with the defendant obviously still in the courtroom, to set the matter for a status conference in 30 days, at which time an agreement might have been reached in the case such that there was no need to go to trial. The Court then addressed Ms. Shaner and the defendant to determine if the defendant was willing to waive speedy trial, with the Court noting that the parties needed "more time to talk to each

other and talk to you to see if this matter can be resolved." (TR, Status Conference, March 26, 2008, pp. 12-14.)   After the defendant consented to the exclusion of the time for speedy trial purposes, Ms. Shaner made one last comment:

> Ms. Shaner: I would like to make one more comment by way of explanation. From the beginning I told the Court that this matter had international implications. And it is important to Mr. Tovar Pupo to have Mr. Perez in the case .... The Supreme Court of Columbia has set with Mr. Tovar Pupo. The attorney general [of Colombia] has met with him but not yet interviewed him. In Colombia, Mr. Perez is very well-known. And he not only has the capacity to negotiate with our government but also with the government of Colombia which in this case is very important.

(TR, Status Conference, March 26, 2009, pp. 14-15.)

       These excerpts demonstrate that both before and after addressing the defendant, the District Court addressed one party or the other about the possibility that the case would result in a guilty plea rather than a trial. In fact, at the end of the hearing, the Court asked the defendant directly if he agreed to exclude time for speedy trial purposes so that his lawyer could talk to the government about a plea agreement.   The Court's discussion with the defendant was thorough. At no time did the defendant acknowledge any problem with being represented by Mr. Perez, whether in plea negotiations or at trial. Indeed, the defendant appeared to particularly value Mr. Perez' representation because Mr. Perez was adept, according to co-counsel, at also negotiating with the government of Colombia, which apparently was critical to the defendant.

       Further, at the change of plea hearing on July 22, 2009, less than three months after the conflicts hearing, the defendant made it clear to the Court that he was totally satisfied with his

legal representatives and had no complaints regarding his lawyers. (TR, Plea Hearing, July 22, 2009, p. 48.) In addition, at the change of plea hearing, the defendant was clear that the statement of facts was true, no one had threatened him in any way to plead guilty, and that he was pleading guilty knowingly and voluntarily. (Id. at pp. 7-8, 47-48.)

Thus, in looking at the thorough discussion by the Court, at both the conflicts hearing and the change of plea hearing, it is clear that the defendant had no reservations about Mr. Perez, clearly understood the potential conflict of interest, and waived any conflict.

**B. Defendant cites no case law to show Perez' potential conflict was unwaivable**

Defendant argues that he could not waive the conflict of interest he complains about. The cases cited by the defendant to show that the purported conflict of interest was not waivable do not support the defendant's position. As an initial matter, both cases involved actual conflicts of interest, while the instant case involved at most a potential conflict of interest. Even if it is assumed that Mr. Perez had an actual conflict of interest, the cases cited by defendant do not show that such a conflict is unwaivable.

Defendant claims that *Freeman v. United States,* 971 A.2d 188 (D.C.C.A 2009), stands for the proposition that an actual conflict of interest is unwaivable. The case does not support this proposition. Kelvin Freeman was convicted of killing his girlfriend's mother and step-father, and before trial the trial court disqualified Freeman's retained counsel, one Jonathan Stern. Stern was prepared to show that one of Stern's former clients, Navarro Hammond, committed the murders. Stern was disqualified from representing Freeman, but Freeman asked the trial judge to reconsider, claiming that Hammond, and Freeman himself, were willing to waive any conflict. The trial judge declined to permit Stern to represent Freeman, finding an actual

9

conflict of interest for which the trial judge declined the offers of waiver, and Freeman went to trial without Stern.  On appeal, Freeman complained that the trial court was required to accept the waivers of his counsel's actual conflict of interest.  *Freeman,* 971 A.2d at 192-193.  The appellate court concluded that the trial court had not abused her discretion by disqualifying attorney Stern, but not because such a conflict was unwaivable.  In fact, the appellate court noted that such an actual conflict  was waivable, but found that the trial court had the discretion to balance the right to counsel against other interests.  *Id.* at 196-97.

Similarly, defendant argues that *Thomas v. Foltz*, 818 F.2d 476 (6th Cir. 1987) also stands for the proposition that an actual conflict of interest is not waivable.  Again, the case does not support this proposition.  Thomas and two defendants were accused of burglarizing a home and killing the owners when the owners unexpectedly returned home.  The same defense attorney represented all three defendants.  The prosecutor offered to reduce the murder charge to second degree murder if all three pleaded guilty, and eventually all three pleaded guilty.  On appeal Thomas argued that he was denied effective assistance of counsel because his attorney had an actual conflict of interest which caused his plea to be involuntary.  *Foltz* at 477-78, 479-80.  *Foltz* does not say that an actual conflict of interest cannot be waived.  Rather, *Foltz* essentially points out the danger of a wired plea when the same defense counsel represents two or more defendants in the same case.  In *Foltz,* the defense counsel admitted at a habeas hearing that his multiple representation caused him to forego exploring possible lesser pleas or cooperation for Foltz, who was the least culpable of the three defendants.  *Id.* at 481.  The 6th Circuit concluded that defense counsel chose a course of action harmful to Foltz and that this course of action affected the voluntary nature of Foltz' plea.  *Id.* at 482-83.  Not only does *Foltz* not support the claim that Mr. Perez' conflict of interest was unwaivable, but in the instant case, there is no

evidence that Mr. Perez did not explore all possible plea options for the defendant, and on behalf of the defendant, Mr. Perez negotiated a cooperation plea agreement.

### IV. Defendant has not and cannot assert a viable claim of innocence and the delay between the plea and now has substantially prejudiced the government

In its original response filed in January 2012, the government made lengthy arguments concerning both the defendant's failure to assert a viable claim of innocence and the substantial prejudice to the government from the delay between the plea and the most recent motion to withdraw the guilty plea. The government relies on its previous response, but updates those arguments as follows.

In regard to the requirement that the defendant assert a viable claim of innocence, the government would note that in the more than two and one half years since the defendant first filed his motion to withdraw his plea, the defendant has not submitted a viable claim of innocence. [3]  The government understands that the defendant may submit an affidavit, which the government believes may be an attempt to assert a claim of innocence.  Such an affidavit would be submitted almost three years after he filed his original motion to withdraw his plea.[4]

In regard to the factor of prejudice to the government, the government would note that at least three potential witnesses, all co-defendants, have served their United States sentences and been removed to Colombia since the defendant entered his plea of guilty.  Further, in 2013, after the defendant withdrew his motion to withdraw his guilty plea, the government asked the

---

[3]The government acknowledges that in the defendant's original motion to withdraw his guilty plea, his then counsel David Zapp argued that the defendant could assert a viable claim of innocence.

[4]As the government was about to submit this response, it received an affidavit from the defendant, in which the defendant simply writes, as to his innocence: "I maintain that I have not violated any US laws and that I am innocent."

District Court to begin sentencing the co-defendant witnesses who were being held in the District of Columbia in the event of trial. Two such witnesses have been sentenced, and are in the custody of the Bureau of Prisons. Both will likely finish serving their sentences in early 2014 and then will be removed to Colombia. Further, the defendant was indicted for offense conduct which occurred between 1994 and March 2, 2005, when the indictment was returned. More than nine years have elapsed from the ending date of the indictment to the present time, and it has been about four and one half years since the defendant pleaded guilty. These examples illustrate how the delay attributable to the defendant has caused, or contributed to, the government losing witnesses.

      **WHEREFORE**, for the foregoing reasons, the government respectfully asks the District Court to grant the relief requested in this response.

Respectfully submitted,

_____-s-_____

Paul W. Laymon
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division, Department of Justice
(202) 514-1286
paul.laymon@usdoj.gov

CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing motion was provided to defense counsel Barry Coburn on March 5, 2014 via electronic mail.

_____-s-_____
Paul Laymon
Trial Attorney, DOJ