UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG 1 0 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|                                | )  |                                      |
| ------------------------------ | -- | ------------------------------------ |
| UNITED STATES,                 | )  |                                      |
|                                | )  |                                      |
| v.                             | )  | Criminal Action No. 04-114-9 (RBW)   |
|                                | )  |                                      |
| RODRIGO TOVAR PUPO,            | )  |                                      |
|                                | )  |                                      |
| Defendant.                     | )  |                                      |
|                                | )  |                                      |

## ORDER

On March 2, 2005, a grand jury indicted the defendant in this criminal matter on one

count of conspiring to manufacture and distribute five or more kilograms of cocaine, with the

intent or knowledge that the cocaine would be imported into the United States. Second

Superseding Indictment at 2-3, ECF No. 8. More than ten years after the indictment was issued,

the defendant has now filed a motion to dismiss the indictment, on the ground that it "fails to

allege an offense against the United States." Defendant Rodrigo Tovar Pupo's Motion to

Dismiss ("Mot.") at 1. The government opposes the motion. Response to Defendant's Motion to

Dismiss ("Resp.") at 1. Upon careful consideration of the parties' submissions, the Court denies

the defendant's motion to dismiss for the reasons that follow.[1]

## I.    LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12, a motion to dismiss an indictment for

failure to state an offense "[m]ust [b]e [m]ade [b]efore [t]rial." Fed. R. Crim. P. 12(b)(3)(B)(v).

More specifically, it "must be raised by pretrial motion if the basis for the motion is . . .

reasonably available [before trial] and the motion can be determined without a trial on the

---

[1] The Court has previously recited the facts of this case, see November 18, 2014 Memorandum Opinion ("Mem. Op.") at 2-5, ECF No. 435, and so for the sake of brevity, the Court will not repeat them again here.

merits." Fed. R. Crim. P. 12(b)(3). Thus, generally, if the motion is not raised before trial, it is "untimely." Fed. R. Crim. P 12(c). "But a court may consider" the motion, even if it is untimely, so long as the moving party "shows good cause." Fed. R. Crim. P 12(c)(3).

In assessing whether good cause exists, "a district court should take into account the reason for the defendant's tardiness and whether he has shown that he is actually prejudiced by the defect in the indictment of which he complains." United States v. Madeoy, 912 F.2d 1486, 1490 (D.C. Cir. 1990); cf. Davis v. United States, 411 U.S. 233, 243-44 (1973) (upholding the district court's decision to deny relief from Rule 12 motion where the defendant failed to establish good cause and prejudice to excuse untimely motion).

## II.   ANALYSIS

### A.   Whether The Defendant's Motion Is A Challenge To The Court's Jurisdiction Or The Propriety Of The Indictment

As a preliminary matter, the Court must address the underlying premise of the defendant's motion to dismiss. The defendant posits that his case must be dismiss because the indictment "fails to allege an offense against the United States," and thus, "this Court lacks jurisdiction over it." Mot. at 1. But a motion to dismiss for a defective indictment is not one and the same as a motion to dismiss for a lack of jurisdiction. Compare, e.g., Fed. R. Crim. P. 12(b)(2) (jurisdictional arguments can be raised at "any time while the case is pending), with Fed. R. Crim. P. 12(b)(3) (arguments concerning a defective indictment must be raised by a "pretrial motion"). Relying on Supreme Court precedent, a recent amendment to Federal Rule of Criminal Procedure 12 has clarified that an allegation of a defective indictment does not implicate the jurisdiction of the Court. See Fed. R. Crim. P. 12 advisory committee's note (explaining amendment and quoting United States v. Cotton, 535 U.S. 625, 629-31 (2002), where the Supreme Court "held that a defective indictment [does not] deprive[] a court of

2

jurisdiction" (internal quotation marks omitted)). Therefore, the Court will treat the defendant's motion as challenging whether the indictment charges an offense.

### B.   Whether The Defendant Has Demonstrated Good Cause For Untimely Motion

#### 1.   Reason for Delay

The defendant admits that his motion is untimely.[2] Mot. at 1 n.1 ("[L]eave respectfully is requested, pursuant to Fed. R. Crim. P. 12(c)(3), to file this motion [to dismiss a defective indictment] out of time." (emphasis added)). Nevertheless, he insists there is good cause for the Court to entertain his untimely motion because "given the pressure applied by [the defendant's] prior counsel upon him to plead guilty, he could not have reasonably [been] expected to have filed a motion to dismiss prior to entry of his guilty plea."[3] Mot. at 1 n.1.

The Court finds the defendant's purported good cause for delay unavailing. Prior to pleading guilty to the conspiracy charge, the defendant was represented by two attorneys—only one of whom he alleges pressured him into accepting a guilty plea.[4] Even if one of the defendant's attorneys "pressure[d]" him into entering a guilty plea, which is contrary to the

---

[2] Absent this admission, the Court would still conclude that his motion is untimely. The basis for the defendant's motion was reasonably available to him before he entered his guilty plea—a guilty plea that the Court has not permitted the defendant to withdraw, thereby extinguishing the pretrial phase of the case, the time in which a defective indictment challenge must be raised. See Fed. R. Crim. P. 12(b)(3)(B).

[3] The defendant cites the "long procedural history" as good cause for entertaining his belated motion. Mot. at 1 n.1. This only serves to underscore how much time has elapsed between the issuance of the indictment and the filing of his motion, such that he had ample time earlier to file the instant motion.

[4] The defendant was previously represented by Heather Shaner and Joaquin Perez. See Mem. Op. at 3 & n.2; see also Resp. at 2. The defendant has never accused Ms. Shaner of providing ineffective assistance of counsel. Instead, his indignation has been directed at Mr. Perez, who allegedly labored under a conflict of interest and pressured the defendant to enter a guilty plea, see Mem. Op. at 14 n.10. The Court has previously rejected the notion that Mr. Perez's representation of the defendant adversely impacted his decision to plead guilty. See id. at 12-16. Because the Court has already concluded that all prior counsel for the defendant have adequately represented the defendant's interests, it follows that he was not prevented from raising any issue with the indictment prior to the entry of his guilty plea. See United States v. Weathers, 186 F.3d 948, 952-53, 958 (D.C. Cir. 1999) (no good cause to excuse delay under Rule 12 challenge to indictment, where excuse for delay depended on claim of ineffective assistance that was rejected by the Circuit).

3

defendant's representations made under oath during the Court's extensive guilty plea colloquy,
see Mem. Op. at 13-15, he has not explained why his other attorney (Ms. Shaner) could not have
filed a motion to dismiss the indictment before he pleaded guilty.

### 2.   Prejudice

The Court also finds that the defendant has not been prejudiced by any defect in the
indictment because there is no defect. "When considering a motion to dismiss for failure to state
an offense, the court 'is limited to reviewing the face of the indictment and, more specifically,
the language used to charge the crimes.'" United States v. Sanford, Ltd., 859 F. Supp. 2d 102,
107 (D.D.C. 2012) (Walton, J.) (emphasis in original) (quoting United States v. Sunia, 643
F.Supp.2d 51, 60 (D.D.C. 2009)); see also United States v. Pickett, 353 F.3d 62, 67 (D.C. Cir.
2004) ("the indictment [must] 'contain the elements of the offense intended to be charged and
sufficiently apprise the defendant of what he must be prepared to meet'" (quoting Russell v.
United States, 369 U.S. 749, 763 (1962)) (alteration omitted)); id. ("indictments have been
upheld where they tracked the language of the statute"); United States v. Ring, 628 F. Supp. 2d
195, 204 (D.D.C. 2009) (explaining that on a motion to dismiss an indictment under Rule 12, the
Court is "bound to accept the facts stated in the [four corners of the] indictment as true" and
examine whether it "sufficien[tly] . . . charge[s] an offense" (citations and internal quotation
marks omitted)); Fed. R. Crim. P. 7(c)(1). Here, the defendant does not complain that the
indictment failed to adequately apprise him of the conspiracy charge. And any such complaint
would be unfounded as the indictment identifies and tracks the language of the specific statutes
that the defendant is alleged to have violated. See Pickett, 353 F.3d at 67.

Instead, the defendant argues that no offense has been properly charged against him
because "during the time [he] exercised supervisory control over a segment of territory in

Colombia, he was acting pursuant to de facto governmental authority," Def.'s Mot. at 1, and

thus, "the taxing authority over which [the defendant] exercised some supervisory authority was

legitimate, not illegitimate," id. at 2.[5] This "head-of-state immunity" argument is undermined by

United States v. Noriega, 117 F.3d 1206 (11th Cir. 1997). In Noriega, the district court denied

the defendant's pretrial motion seeking dismissal of his indictment, which contained multiple

drug-related charges. See id. at 1209, 1211. On appeal to the Eleventh Circuit, the defendant

argued, inter alia, that he was entitled to head-of-state immunity because "he served as the de

facto, if not the de jure, leader of Panama." Id. at 1211. The Eleventh Circuit rejected the

defendant's claim of immunity, reasoning that the United States never recognized the defendant

as the leader of Panama. See id. at 1212. Likewise, the United States has never recognized the

defendant in this case as a lawful, governmental leader in Colombia. That the "government of . .

. Columbia had [allegedly] abdicated responsibility for th[e] territory" controlled by the

defendant and that "liasons existed between the organization of which [the defendant] was a part

and both the government of Colombia and the United States government," Def.'s Mot. at 2, do

not support even an inference that the defendant acted pursuant to de facto Colombian

governmental authority. The defendant has provided no evidence showing that either Colombia

or the United States recognized him as a legitimate leader in Columbia, despite any alleged

relations these countries might have had with him.[6] See Noriega, 117 F.3d at 1212.

---

[5] The indictment generally accused the defendant of perpetrating the cocaine conspiracy by imposing "war taxes" on drug traffickers, who manufactured and distributed cocaine, with the intent that the cocaine would be imported to the United States, and in exchange for those taxes, providing the traffickers with security, which permitted them to accomplish their criminal objective in the region of Columbia controlled by the defendant. See Mem. Op. at 2-3.

[6] Although "[a]s a general matter, the unlawfulness of an activity does not prevent its taxation," Dep't of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767, 778 (1994), the defendant has not shown that he was ever in a position to engage in the "[l]egitimate collection of taxes" in Colombia, Def.'s Mot. at 2 (emphasis added).

Finally, the defendant contends that his actions did not "constitute a conspiracy in violation of the laws of the United States, so long as he did not intend to achieve the drug traffickers' objective of . . . [manufacturing and distributing five kilograms or more of cocaine, intending and knowing that such cocaine would be unlawfully imported into the United States]."[7] Def.'s Mot. at 3. The Court easily dispatches with this contention, as it has already found—and will not revisit the issue again—that the defendant possessed the requisite intent to be charged with criminal conspiracy when it denied the defendant's request to withdraw his guilty plea.[8] See Mem. Op. at 16 n.12, 18-20; see also United States v. Bollinger, 796 F.2d 1394, 1407-08 (11th Cir. 1986) ("[T]he common objective of the conspiracy was to distribute cocaine and marijuana for the financial benefit of the participants. Even had certain persons . . . been involved only in the laundering facet, they could have been found to be part of the conspiracy to distribute controlled substances."), opinion modified in other respects on denial of reh'g sub nom. United States v. Bolinger, 837 F.2d 436 (11th Cir. 1988).

For all of the foregoing reasons, the Court will deny the defendant's motion to dismiss the indictment.

---

[7] To the extent that the defendant suggests that he has not violated any United States law through his conduct in Colombia, this Court previously rejected that suggestion in denying the defendant's motion to withdraw his guilty plea. See Mem. Op. at 16 & n.12 (citing Morales v. United States, 933 F. Supp. 2d 82, 84 (D.D.C. 2013)).

[8] In concluding that the defendant had the requisite intent to commit the charged crime, the Court relied on the defendant's admissions and representations made during his plea colloquy. See Mem. Op. at 16-19; see also United States v. Jones, 642 F.3d 1151, 1158-59 (D.C. Cir. 2011) ("A 'motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.'" (quoting United States v. Shah, 453 F.3d 520, 523 (D.C. Cir. 2006))).

### III.    CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendant Rodrigo Tovar Pupo's Motion to Dismiss is **DENIED**.

**SO ORDERED** on this 7th day of August, 2015.

REGGIE B. WALTON
United States District Judge

7